UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GARAMENDI, as Insurance Commissioner of the State of California and as Conservator, Rehabilitator and Liquidator of the Estate of Executive Life Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>ALTUS FINANCE, S.A., et al.,<br><br>Defendants. | Case No. CV-99-02829 AHM (CWx)<br><br>**JUDGMENT ON COMMISSIONER'S CLAIMS AGAINST DEFENDANT JEAN-FRANCOIS HENIN**<br><br>The Honorable A. Howard Matz |

Pursuant to Rule 60(a) of the Federal Rules of Civil Procedure, this Court hereby enters this judgment (the "Corrected Commissioner Judgment") in this matter in favor of Plaintiff John Garamendi, as Insurance Commissioner of the State of California, ("Commissioner") and against defendant Jean-Francois Henin ("Henin") in the amount of $10,846,246, plus interest from December 2, 2005 at the rate of 4.30%, compounded annually, until satisfied.

Although the judgment entered on Commissioner's behalf against Henin on December 2, 2005 (the "Original Commissioner Judgment") met all requirements for enforcement in the United States, this Court has been advised that the courts of France have withheld enforcement of the Original Commissioner

1  Judgment because it does not sufficiently describe the wrongful actions of Henin
2  on which it is based, or the manner in which the Court determined its amount.
3          Accordingly, out of respect for the courts of France, and to ensure
4  enforcement of this judgment, this Court hereby enters this Corrected
5  Commissioner Judgment to supply the additional information the French courts
6  require.
7          Rule 60(a) permits a court to correct "a mistake arising from oversight
8  or omission whenever one is found in a judgment, order, or other part of the
9  record." Fed. R. Civ. P. 60(a). The rule does not permit this Court to substantively
10 change a judgment, but the Court may properly invoke Rule 60(a) to make a
11 judgment reflect "what the court originally intended to do." *Robi v. Five Platters,*
12 *Inc.*, 918 F.2d 1439, 1445 (9th Cir. 1990). This Corrected Commissioner
13 Judgment changes no substantive provision of the Original Commissioner
14 Judgment, nor does it reflect any change in the reasoning that led this Court to
15 enter that judgment. Rather, it incorporates only the facts and evidence before the
16 Court at the time of the Original Commissioner Judgment, and supplies the
17 additional information required to assure its enforcement in France.
18         This Corrected Commissioner Judgment is entered in response to a
19 duly noticed motion by Sierra National Insurance Holdings, Inc. and Georgia Lee,
20 as receiver for Sierra National Insurance Holdings, Inc. (collectively, "Sierra"),
21 asking this Court to correct the Original Commissioner Judgment and the separate
22 judgment against Henin entered on Sierra's behalf (collectively, the "Original
23 Judgments").
24         Henin's attorneys filed an opposing brief and also presented oral
25 argument in opposition to Sierra's motion seeking correction of the Original
26 Judgments at a hearing on September 20, 2010. In accordance with standard
27 practice, the Court directed Sierra to propose draft forms of judgment. Henin's
28 counsel received those drafts on October 29, 2010 and were given two weeks to

reply.  This Corrected Commissioner Judgment is binding on both Sierra and Henin, but is not meant to be, and shall not be, binding on the Commissioner, Artemis or NOLHGA.  Nor may it be cited by the Commissioner, Artemis or NOLHGA in the case now on remand.  This Corrected Commissioner Judgment reflects the ruling of the Court after considering the draft proposed by Sierra and the response of Henin's attorneys.

## I. PROCEDURAL HISTORY

The Commissioner filed his original complaint in California state court against numerous defendants ("Defendants"), including Henin, on February 17, 1999, and served the summons and complaint on him.  Henin removed the action from state court to this Court on March 18, 1999.  The Commissioner filed an Amended Complaint on June 18, 1999, and served it on Henin on July 29, 1999.  The Commissioner then filed a Second Amended Complaint on September 15, 1999.  Henin filed an answer to the Second Amended Complaint on January 18, 2000, and thereby submitted to the jurisdiction of this Court.  The Commissioner filed his Third Amended Complaint (the "Complaint") on February 16, 2000.  Henin filed an answer to the Complaint on February 28, 2000.  On that date, he also filed a cross-claim against defendants Credit Lyonnais, Altus Finance S.A. ("Altus"), Consortium de realisation, and CDR Entreprises.

The primary claims against Henin are that he engineered a fraud and a conspiracy through secret *contrats de portage* that enabled Defendants to acquire control of Executive Life Insurance Company ("ELIC"), then California's largest life insurance company, in violation of both state and federal laws.

Henin participated fully in the discovery process testifying, with counsel, for eleven days of deposition in Paris.  He received notice of the date on which trial of the case would take place and filed a signed declaration with this Court stating that he would appear at trial through counsel.  Order of January 12, 2005, at 2.

He did not do so. Neither he nor his counsel appeared at the trial. Accordingly, a default was entered against him on April 21, 2005. Order re Application for Entry of Default Against Defendant Jean-Francois Henin on All Issues of Liability as to the Commissioner.

Rule 55 of the Federal Rules of Civil Procedure requires that where the clerk cannot enter a judgment of default, a "party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Accordingly, when Henin failed to appear for trial, the Commissioner applied for a default judgment against him, after due notice to him. Application for Entry of Default Against Defendant Jean-Francois Henin on All Issues of Liability as to the Commissioner (April 21, 2005). Henin made no response to that application.

Upon a default the court generally accepts as true the plaintiff's pleaded factual allegations. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). However, even upon a default, entry of a default judgment "is entirely within the court's discretion and may be refused where the court determines no justifiable claim has been alleged or that a default judgment is inappropriate for other reasons." *Doe I v. Qi*, 349 F. Supp. 2d 1258, 1271 (N.D. Cal. 2004).

After determining that an award against Henin and on behalf of the Commissioner was warranted, and fixing its amount, this Court entered the Original Commissioner Judgment on December 2, 2005.

**II.     FACTS AND EVIDENCE SUPPORTING THE JUDGMENT AGAINST HENIN IN FAVOR OF THE COMMISSIONER**

This Court wishes the courts of France to know that there is ample evidence of Henin's fraudulent conduct to support the finding of liability against him. By the time the Original Judgments were entered against Henin in December 2005, this Court had managed the Commissioner's case for nearly seven years and the companion Sierra case for nearly five years. It had presided over numerous motions involving factual issues in this case as well as the full trial in the

4

1 Commissioner's case against another Defendant, Artemis, which also involved
2 such issues. The principal facts establishing Henin's liability, which the Court
3 took into account in entering the Original Commissioner Judgment, can be
4 summarized as follows.

5 On April 11, 1991 the Commissioner was appointed conservator of
6 ELIC pursuant to orders by the Los Angeles County Superior Court because of
7 ELIC's "precarious financial condition." *See* Complaint ¶¶ 27-28. In May 1991,
8 the Commissioner announced that he intended to negotiate with Altus, a subsidiary
9 of defendant Credit Lyonnais, to restructure and rehabilitate ELIC. *Id.* at ¶ 29.

10 Altus and Credit Lyonnais were both aware that they could not legally
11 acquire ELIC's insurance business because doing so would violate the laws of both
12 the United States and California. *Id.* California Insurance Code § 699.5 provided
13 that a foreign government entity may not own, operate, or control a California
14 insurance company. *Id.* At the time of the ELIC acquisition, Credit Lyonnais and
15 Altus were owned by the government of France. *Id.* at ¶ 40.

16 In addition, the federal Bank Holding Company Act, 12 U.S.C. § 1841
17 *et seq.*, provided that a bank holding company could not directly or indirectly own
18 more than 25% of any company that was not a bank or other authorized business.
19 *Id.* at ¶ 30.

20 Thus, the acquisition or control of ELIC's insurance business by Altus
21 and Credit Lyonnais would violate both California and federal law.

22 During the bidding process for ELIC, the Commissioner and others
23 had informed Henin that any proposed acquisition of ELIC would have to comply
24 with the provisions of the California and federal laws. *Id. See also* March 2, 2005
25 Tr. at 74:17-75:5, 100-21-101:8. Henin understood these legal restrictions and
26 represented — falsely — that he would comply with them. *See, e.g.*, April 9, 1991
27 Letter from Henin to Garamendi, LA/AA 14778-14790 at 14778 ("[n]either the
28 investment vehicle, nor the other investors will be foreign government

1  controlled"). Notwithstanding these representations, Henin engineered a scheme to
2  violate these state and federal laws. Henin, as Altus' Chief Executive Officer,
3  identified MAAF, a French insurance company, as a partner with Altus and Credit
4  Lyonnais in their bidding syndicate. *See* Complaint ¶ 31; March 22, 2005 Tr. at
5  175:19-182:11.

6  On August 7, 1991, the Commissioner announced that he had signed
7  an agreement with the Altus/Credit Lyonnais syndicate. *See* Complaint ¶ 32. The
8  previous day, on August 6, 1991, Altus and MAAF entered into *contrats de*
9  *portage*, which were amended and re-executed on or about November 15, 1991,
10 signed by Henin. Trial Exhibit 434, CDR 0013863-869; Trial Exhibit 436, CDR
11 0013884-88; Trial Exhibit 1155, S&A 5229-33; Trial Exhibit 1157, M000007-19;
12 Nov. 15, 1991 Memorandum of Understanding Between MAAF and Altus,
13 M005564-70. Henin also instructed his employee to sign the August *contrats de*
14 *portage*. March 16, 2005 Tr. at 86:17-89:19. Henin never informed the
15 Commissioner of these agreements, and the Commissioner was unaware of them.
16 March 22, 2005 Tr. at 192:15-22; March 2, 2005 Tr. at 74:17-24, 98:24-103:14;
17 March 3, 2005 Tr. at 42:7-17.

18 The *contrats de portage* provided that MAAF would act as a front for
19 Altus in acquiring the insurance business of ELIC when, in fact, Altus and Credit
20 Lyonnais, would own and control that business. An agreement entitled "Promise
21 to Purchase Stock" provided that MAAF agreed to sell all the shares it would
22 obtain in the ELIC insurance business to Altus at a date in the future. Trial Exhibit
23 434, CDR 0013863-869. The agreement was subject to an express secrecy
24 provision. *Id.* at 0013867. An agreement entitled "Management Agreement"
25 provided that while MAAF would hold shares in the ELIC insurance business, it
26 would only exercise its rights as a shareholder at the direction of Altus and in order
27 to implement Altus' strategy with respect to such holdings. Trial Exhibit 436,
28

CDR 0013884-888 at 0013885. The second agreement was also subject to an express secrecy provision. *Id.* at 0013887.

The *contrats de portage* were intended to make it appear as if MAAF and other co-investors were legitimate, independent investors and participants in the bidding syndicate, but they secretly gave Altus and Credit Lyonnais explicit control over ELIC's bond portfolio and insurance business. *See* Complaint ¶¶ 34-35. Not only was the existence of the *contrats de portage* not disclosed to the Commissioner and the U.S. banking authorities, as required by law, but their existence was repeatedly denied by Defendants. *Id.* at ¶¶ 36-38, 41-42, 44-49.

The Altus/MAAF bid violated both state and federal laws by giving Altus and Credit Lyonnais control of the ELIC insurance business and, therefore, could not legally be accepted. *Id.* at ¶ 30. Unaware of the illegal nature of the Altus/MAAF bid because the *contrats de portage* had been kept secret, on November 14, 1991, the Commissioner announced his selection of the Altus/MAAF bid for the ELIC bonds and insurance business over the competing bids. Had the Commissioner known of the secret *contrats de portage*, the Commissioner could not and would not have approved the Altus/MAAF bid. *Id.* at ¶¶ 30, 43.

Henin, at all relevant times the Chief Executive Officer of Altus, was one of the Defendants who committed these wrongful acts which enabled them to acquire ELIC. The Complaint and the evidence specified fraudulent and misleading documents filed by Defendants and by Henin individually to the Commissioner and to other regulatory agencies. *Id.* at ¶ 73. The Complaint and the evidence also established that Henin "directly benefited from the acquisition of ELIC's assets through various means, including but not limited to dividends, bonuses, salaries and ownership of companies that at some time directly or indirectly owned or owns the ELIC high-yield bond portfolio and/or ELIC insurance business." *Id.* at ¶ 77.

At the September 20, 2010 hearing on Sierra's motion to correct the Original Judgments, this Court itself stated that Henin was "one of the key architects of this fraud," and that he "is still fighting to protect what the record shows were some ill-gotten and very substantial profits and gains that he derived from what he did." September 20, 2010 Hearing Transcript ("Hearing Tr."), at 7:17-18, 7:20-22.

This Court provides this additional information to the courts of France for their consideration should Henin attempt to repeat his claim that, had he chosen to defend himself at trial, he would have prevailed. Henin had the opportunity to appear at trial, through counsel or otherwise, to address the claims, and he declined to do so contrary to his representations to this Court.[1]

### III. THE BASIS FOR THIS COURT'S AWARD TO COMMISSIONER

A party who fails to appear at trial after receiving due notice of it does not thereby admit to the amount of damages to be assessed. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Rather, the court must make that independent determination. *See Pope v. United States*, 323 U.S. 1, 12 (1944). In assessing the amount of damages to award against a defaulting party, the courts have wide discretion. *See Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir.

---

[1] Should Henin attempt to renew his claim of innocence, this Court wishes the French court to know that, in the criminal case brought against him for his involvement in these matters, Henin pled guilty to felony charges that he had "caused Credit Lyonnais to make false statements concerning material facts" to the Federal Reserve Bank of New York and the Board of Governors and that he "well knew [that] these representations were false and misleading." Plea Agreement Between the United States Attorney's Office and Defendant Jean-Francois Henin (July 21, 2006) at Ex. A, ¶¶ 33-35. These criminal charges were pending at the time of the Original Commissioner Judgment. Henin entered this plea pursuant to the procedure described in the case of *North Carolina v. Alford*, 400 U.S. 25 (1970). For civil purposes, an *Alford* plea is the full equivalent of a guilty plea. *See Blohm v. Comm'r of Internal Revenue*, 994 F.2d 1542, 1554-55 (11th Cir. 1993). Thus, in this case, the French court may assume that Henin has admitted being guilty of the criminal acts described in his plea agreement.

JUDGMENT ON COMMISSIONER'S CLAIMS AGAINST DEFENDANT JEAN-FRANCOIS HENIN

A/73569324.1

1993) (*citing Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 321 (2d Cir. 1986)).

        In support of its application for default judgment, the Commissioner presented expert testimony that Henin's wrongful acts resulted in his being unjustly enriched in the amount of $10,846,246 as of September 1, 2005. Application by Commissioner for Order Re Default Judgment Against MAAF Defendants and Henin (Aug. 30, 2005), at 13:17-18.  This amount, according to the Commissioner's expert, D. Paul Regan, consisted of $6,076,418 that Henin received as his share of ELIC investment income plus an additional $4,769,828 representing the benefit to Henin over the 13 years since he began receiving the fraudulently-acquired net proceeds (*i.e.*, the time value of money).  *Id.* at 13:19-14:7.  Henin submitted no objection or rebuttal to this evidence despite the fact that Rule 55 permitted him such an opportunity.

        Accordingly, after carefully considering the expert testimony presented by the Commissioner, the Court determined to enter judgment against Henin, and in favor of Commissioner, in the amount of $10,846,246, with interest to accrue thereon in accordance with law.  Original Commissioner Judgment, at 1:15-18.  Specifically, this Court stated:

> This judgment is comprised of the following amounts:
> a. $6,076,418 in net proceeds received by Jean-Francois Henin on account of the former ELIC junk bond portfolio;
> plus
> b. $4,769,828 in simple interest at the rate of 7% on the foregoing as of September 1, 2005 calculated in the manner set forth in the Declaration of D. Paul Regan in Support of Application By Plaintiff Insurance

1             Commissioner For Default Judgments by Court Against

2             MAAF Defendants and Henin.

3 *Id.* at 1:19-26.

4             No punitive damages were included in this award. In addressing the

5 issue of punitive damages, this Court explicitly stated: "No punitive damages are

6 awarded." Ruling on the Commissioner's Request for Order Re Default Judgment

7 Against MAAF Defendants (Nov. 9, 2005), at 2:4.

8             At the September 20, 2010 hearing, Henin's attorney acknowledged

9 the basis for this judgment. He stated: "In the commissioner case, the

10 commissioner sought restitution, sought unjust enrichment damages, supplied an

11 expert witness affidavit calculating that, and the Court had accepted that as the

12 basis for the damages." Hearing Tr., at 7:17-20. Henin's attorney did not argue

13 that the Original Commissioner Judgment was lacking a sufficient explanation. In

14 response to this Court's statement that "You can't claim that the $10 million

15 judgment . . . that was awarded to the commissioner lacks any explanation,"

16 Henin's attorney replied, "I am not making that argument, Your Honor." *Id.* at

17 19:1-3.

18             The fact that this amount was identical to the amount this Court

19 awarded Sierra does not mean that the two awards were duplicative or overlapping.

20 At the September 20, 2010 hearing this Court made that clear:

21        What [Henin] did was deceive both of them. His conduct

22        was comparable -- the impact may have been slightly

23        different because of the different theories that one was

24        permitted to pursue than the other, but what your client

25        did had the same impact -- well, it wasn't the same

26        impact because Sierra never got the deal, but it thwarted

27        Sierra's prospects of getting the deal . . ..

28 *Id.* at 18:1-7.

The amount awarded in favor of the Commissioner and against Henin reflects the amount that Henin personally gained through his fraudulent conduct and simply requires Henin to return to the Commissioner the sum that he obtained through his fraud, with interest. As explained more fully in the Court's Corrected Sierra Judgment, the award to Sierra reflects a conservative measure of the portion of the loss suffered by Sierra which this Court determined should be attributed to Henin. In setting the amount to be awarded the Sierra, this Court used, as its measure, a figure equaling the amount of Henin's unlawful gain. There is, however, no duplication in the two awards. They reflect the independent claims of the Commissioner and Sierra and are both entitled to enforcement.

It is also the intention of this Court that this judgment not be subject to any offset for any amount heretofore or hereafter recovered by the Commissioner from any other Defendant or any other entity, whether by way of settlement or otherwise.

Pursuant to 28 U.S.C. § 1961 the Original Commissioner Judgment has continued to accrue interest at the rate of 4.30%, compounded annually. Interest shall continue to accrue on this Corrected Commissioner Judgment at the rate of 4.30% from December 2, 2005 until the judgment is paid.

In accordance with Federal Rule of Civil Procedure 54(b), the Court finds that there is no just reason for delay and that this constitutes a corrected final judgment entered pursuant to Federal Rules of Civil Procedure 60(a). The Court will retain jurisdiction of this cause for such other and further orders as may be necessary.

IT IS SO ORDERED.

Dated:  November 24, 2010

_____
The Honorable A. Howard Matz
United States District Judge